## JAMES JENKINS et al. *v.* M. C. MEAGHER et al.

1. AWARD OF ARBITRATORS — WHAT MAY BE INQUIRED INTO ON EXCEPTIONS. — On exceptions to the award of arbitrators, reported to the court on a reference to them, it is not legitimate to inquire into the original merits in favor of the one party or the other, or to show that on the evidence the award should have been different, or that the law was misconceived or misapplied, or that the decision, in view of all the facts and circumstances, was unjust.

2. SAME — WHAT MUST BE SHOWN IN SUCH CASE. — Exceptants to an award must show excess of authority, or misbehavior, or partiality of some sort, or corruption by the arbitrators.

3. STATUTE — ART. 3, P. 371, CODE OF 1857, CONSTRUED. — The declaration of art. 3, p. 371, Code of 1857, is but an iteration of the doctrines before well established in the courts.

4. SAME — SAME. — If there is no reservation in the submission, the reward is unimpeachable for mistake of law or fact by the arbitrators, unless there be fraud or misbehavior.

5. UMPIRE — PRACTICE. — That the umpire chosen to decide between the arbitrators did not hear the witnesses, but acted on the report of the arbitrators is not ground for setting aside the award unless there was a request that there should be an examination of the witnesses by the umpire.

6. AWARD — BY WHOM TO BE SIGNED. — It is more regular for the umpire alone to sign the award, but the fact that one of the arbitrators signed it with him is no objection. It is not the less his award because signed by one of the arbitrators.

7. MERE INDISCRETION NOT GROUND TO SET ASIDE AWARD. — Mere indiscretion, on the part of arbitrators or umpire, not amounting to fraud or partiality, or corruption, is not ground for rejecting an award.

8. CASE IN HAND. — *Held*, that there was no ground for setting aside the award in this case.

APPEAL from the chancery court of De Soto county. SIMMONS, Chancellor.

The facts of this case are sufficiently stated in the opinion of the court. But a more detailed statement is accurately made in the arguments of counsel, which are given in full, and the reporter adopts as correct the statements made by counsel.

*Powell & McKenzie*, for appellants.

Appellants entered into a written contract with appellee on the 9th day of September, 1869, by which appellee was to build and complete a two story brick masonic lodge and school building at Pleasant Hill, and the same was to be

completed and delivered by appellee to appellants by the 25th day of December, 1859, appellee furnishing all materials, for which appellant was to pay appellee $6,000, fifty-five per cent of said sum to be paid in installments as the work progressed, the balance when the building is received as completed, $600 of said sum was to be deducted if appellants did not see proper to have said building plastered. The building was to be built according to plan and specifications.

On the 27th day of June, 1870, said building was not completed, although the time for completion had long since expired. Appellee executed a deed of trust to appellants to secure them for funds and materials advanced to go into said building, appellee having received more than fifty-five per cent upon said building. In November, 1870, said building was not covered in, and a large portion of the work not being done, and appellee having abandoned said work, appellants were proceeding to execute said trust deed when appellee filed his injunction bill.

In March, 1871, appellants filed their bill in the chancery court of De Soto county, against the appellee and others, to set aside a conveyance of land which appellee had mortgaged to appellants to secure them for certain advances they had made to appellee to enable him to proceed with the work on said building, which said land appellee had afterward sold to other parties. On the 3d day of May, 1871, appellants and appellee entered into an agreement in writing, by which they agreed to refer to J. Slaughter and J. G. Schwartz, as arbitrators, all matters growing out of the contract before referred, and said arbitrators were to examine said building, plans, specifications, contract, deeds of trust, receipts, notes, claims, and other testimony, and make their award in writing, said award was to be as the judgment of a court, with power to choose a third disinterested party, either in the first instance or in case of disagreement.

Said arbitrators met and could not agree, when they selected B. F. Thompson as the third man, and the said

Thompson and Schwartz made their award in writing, and awarded as follows : "We award M. C. Meagher, said contractor and builder, damages to the amount of $500. Said committee to return all trust deeds, properly canceled, held against Meagher, and pay all costs on suits instituted." Appellee had contracted to complete the entire building, including the plastering, for $6,000, and deliver the same to appellants, completed, on the 25th day of December, 1869. In August, 1870, when he abandoned the work, the building not covered in, some eight months after the time he was to complete the same, he had received from appellants, including costs of plastering and the amount that appellants were compelled to pay for materials and labor after the appellee had abandoned the same, the sum of $6,654, when his contract was to complete the building for $6,000, and the arbitrators, in addition to this, gave appellee $500 and all costs. This we think is gross and manifest injustice to appellant. In such a case a court would not hesitate to set aside a verdict of a jury, had a jury rendered such a verdict. We insist that the same rule applies in cases of an award. And, if it appear that there has been manifest injustice or a mistake in law or fact, the award will be set aside. See Penn. Rep., Williams v. Craig, 1 D. 315, also, Wikoff et al. v. Cox, 1 Y. 353.

By the terms of the submission set forth in the agreement to arbitrate, said arbitrators were to examine said building, plans, specifications, contract, deeds of trust, receipts, notes, claims and other testimony, and make their award. This we insist was not done particularly by the umpire Thompson. These papers were all before the arbitrators. Thompson says he examined the contract, but did not examine the specifications, he may have read part of them ; he says, "when we met that morning, my first point was to get the position of each man ; I found they were far apart ; I then introduced what I considered a compromise proposition, neither of the parties would consent ; late in the evening Mr. Schwartz made a proposition ; I then abandoned my prop-

osition and went to his ; as soon as I did this Slaughter expressed a willingness to come to my proposition ; this is all I know about it."

The great ground of complaint was, that appellee had not built the house according to specifications, and the arbitrator or umpire did not read them.

The court will set aside an award for neglect or refusal to examine the witnesses. See Wat. on Arb. and Award, 14 Law Lib., marg. p. 170. The court will set aside an award for mistake in point of fact or law apparent on the face of the award, or some other authentic instrument, or for misbehavior of arbitrators. Ib., marg. p. 159.

If the arbitrators make their award without examining the witnesses, this would be such improper conduct of the arbitrators as to induce the court to set aside the award. See Wat. on Arb., 14 Law Lib., marg. p. 171.

*Walter & Scruggs* and *Johnston & Myers*, for appellees.

In this cause, it appears from the record, that appellants and appellee had certain suits pending in the chancery and circuit courts of De Soto county, against each other, growing out of a certain building contract. That, to settle speedily and amicably these suits and matters of controversy, the parties selected arbitrators, and bound themselves, by a general submission, to abide by and perform the award to be made by them in the premises. Accordingly, appellants selected John Staughton, and appellee, J. G. Schwartz, as the arbitrators, and empowered them, in case of disagreement, to call in a third, disinterested party. That the arbitrators met on the 18th April, 1871, and having heard the parties, and failing to agree, selected, as the umpire, B. F. Thompson, and agreed to meet again on the 19th or 20th April. On the 20th, the arbitrators, including Thompson, the umpire, met at the place designated. Appellant, Jenkins, and appellee, being present. That, at this second meeting, an award was agreed upon, and signed by Thompson, the umpire, and Schwartz, one of the arbitra-

tors, but that Slaughter, the other arbitrator, declined and refused to sign the award. This award, giving to appellee $500 as damages, and directing a dismissal of all suits pending, and the payment of all costs by the appellants, was filed by appellee in said chancery court of De Soto county, at its May term, 1871, and asked to be made the rule and judgment of the court in the premises, in pursuance of said submission. At the same term of the court, appellants filed their exceptions to the award, and the court having heard the same, took the case under advisement, and at the August term following rendered a decree overruling the exceptions, and sustaining the award. From this decree an appeal was taken, and the error assigned is, the action of the court below, in overruling the appellant's exceptions and sustaining the award.

The modern policy of all courts is to uphold awards, and every legal intendment will be raised in their favor. Caldwell on Arb. 279 ; Maryland & Pa. R. R. Co. v. Partee, 19 Metc. 458 ; Morgan v. Mathew, 2 Ves. 15 ; Knox v. Symonds, 1 Metc. 369. And unless fraud, corruption, misbehavior, etc., can be shown, they will be sustained and enforced. Rev. Code, 1857, p. 371, art. 2 ; Perkins v. Giles, 53 Bar. 342 ; Baker v. Crockett, Hardin (Ky.), 388.

The first, fourth and latter part of appellants' third exception are in substance the same, and may be disposed of together. They charge that the award is bad, because it was not signed by Slaughter, the other arbitrator. If the award had been signed by Thompson, the umpire, alone, it would have been sufficient. It was signed, not only by him, but by Schwartz, the other arbitrator, and certainly good. Shields v. Renno, 1 Overt. 318 ; Boyer v. Aurand, 2 Watts, 74 ; Watson on Arb. 33, 88, Law Lib. vol. XI. The submission bond in this case empowered Slaughter and Schwartz to select an umpire, either in the first instance or in case of disagreement. They did disagree, and thereupon selected Thompson as the umpire. For what purpose ? To reconcile Slaughter and Schwartz, and to get them to agree,

either with themselves or him? This might, and in all probability would, prove an impossible undertaking, and, if absolutely necessary to the validity of the award, might defeat the object to be accomplished. The province, duty and privilege of the umpire is to decide where two or more differ, and, having done so, it matters not whether the original arbitrators join him in the award or not. His act and decision must determine all differences and reconcile the parties. Such is the law, laid down in all the authorities, and strongly and forcibly so in the following cases: Hobson v. McArthur, 16 Pet. 182; Kingston v. Kincaird, 1 Wash. C. C. 448; Sauls v. Hodgson, Burr. 1474; Mayor of New York v. Butler, 1 Barb. 325.

The second exception, so far as it says the arbitrators refused to hear the testimony, is wholly overturned by the proof. As to whether they "considered the testimony, in making their award, or not," is a matter of conscience with them, and a fact of which they cannot and should not be questioned. That they did hear the proof (all that was offered) is beyond dispute. That they or the umpire did render an award is certain. As to whether the award is technically and legally right, or such an award as some other parties might have rendered, is not for the court to determine. The parties, to end litigation, chose to withdraw their several suits from the regularly constituted courts and submit them, for settlement, to a special court of their own creation. This special court has not only the power, but it is a part of its duty, to pass upon both the law and facts in the case, and if, to do equity and substantial justice, it should bend the strict rules of law to meet its views of what is right and proper in the premises, its award and judgment will be upheld and enforced. Baker v. Crockett, Hardin, 388, and before cited; Jolly v. Blanchard, 1 Wash. C. C. 252; Watson on Arb. 39; Caldwell on Arb. 140.

That part of exception three which objects to the award, because the umpire did not re-examine the witnesses, is not well taken, because "the umpire may award upon the

report of the arbitrators, without re-examining the witnesses, unless he is directed to do so by the submission, or it is afterward required of him by one or the other of the parties before he makes his award." Cald. on Arb. 112; Sharp. v. Lipsey, 2`Bail. 133. In this case, neither by the submission nor by the parties was he required to do so. As to the charge that Slaughter and Schwartz differed in their statement of the facts, and that Thompson took the statement of the latter in preference to the former, and that Slaughter then withdrew from the board, and the award was agreed to and signed in his absence (all of which, if true, would not have affected the validity of the award), is not sustained by the proof. On the contrary, all the witnesses state that Slaughter and Schwartz did agree as to facts, but differed as to the conclusions to be drawn from the evidence; that Slaughter was present and took part in the deliberations of the board, and remained until the award had been agreed upon by Schwartz and Thompson, and signed by them.

The fifth, eighth and ninth exceptions are wholly unsustained by the proof, and were gracefully abandoned by counsel in their argument in the court below. If there was any partiality or misconduct shown at all, it was on the part of Slaughter, the arbitrator selected by appellants, and the man who refused to sign the award against his own employer. He had made an estimate and formed an opinion before he was selected by appellants to act as arbitrator, but not selected before he had communicated such knowledge to them, and for whom he was at the time working. He it was who held secret conferences with appellant Bridgeford, on the first day of the meeting of the board, and succeeded in having . Dr. Collins, the umpire first selected, turned out, and Thompson chosen in his place, and all at the instance, and to please and satisfy said appellant Bridgeford. Is it strange that he subsequently refused to sign the award? and hence one of the reasons and necessity of the rule of law, clothing the umpire indifferently

chosen, with full power to cut through all difficulties and settle the matters in dispute between the parties. But appellants will not be heard to complain of such conduct on the part of their own well-advised and well-chosen arbitrator, as, in fact, they do not. Fox v. Hazleton, 10 Pick. 275.

Appellant's sixth exception is bad both in law and under the proof. It was unnecessary that the parties should have had notice of the second meeting of the arbitrators, unless the submission so required, or the parties had requested to be present for the purpose of introducing other testimony. As has been seen, the umpire could make his award upon the report of the arbitrators. But, in point of fact, the parties did have notice of this second meeting; but, whether so or not, they were present, not objecting, but acquiescing in the deliberations of the board, and they are now and forever concluded from objecting on account of any pretended irregularity of the meeting, or want of notice of it. 2 Rawle, 341; 3 Watts, 126; Cald. on Arb. 121; Newton v. West, 3 Metc. 24.

The tenth and last exception is similar to the second, and may be considered disposed of with it.

And now, in conclusion, we would again advert to the fact that an award, regular in all respects as the one at bar, cannot be assailed or set aside except upon some one or more of the grounds laid down in the statute, and reiterated by the whole current of authorities on the subject, to wit, fraud, partiality or misconduct on the part of the referees or parties. In the case of Baker v. Crockett, after a most elaborate and exhaustive review and discussion of the whole subject, the court uses the following strong language: "It is not anywhere said that the court can unravel the accounts or the award to get at a mistake of law or fact whereby to set it aside. But the contrary is expressly held, and although the cases are numerous in which awards have been set aside in chancery, they are cases in which fraud, partiality or corruption, in greater or smaller portions, have infect-

ed the transaction of the party or of the arbitrators in pro-
curing or making up the award.   It may fairly and reason-
ably be affirmed, then, that the award itself should furnish
the evidence of a mistake of law or fact, and not a resort to
the evidence upon which the arbitrators decided, and from
which they extracted an erroneous deduction of an existing
fact, when it was not a fact ; or that the law operated so upon
the facts when it operated otherwise.   To hold otherwise
would be to make the submission to the arbitrators, and the
award in pursuance of the same, a mere plaything, to be
thrown aside when either party is tired of it."   Again the
same authority says, "that on a bill to set aside an award,
the court will not let the party go into any legal objections
but for partiality and corruption.   Misjudgment of arbi-
trators in the very matters submitted to them is not ground
for setting aside the award."   In the case at bar, no fraud,
partiality or misconduct has been shown to exist on the
part of either Schwartz, the umpire, or the appellee.   Such
being the case, appellants cannot go behind the award and
try the case anew, as they attempted to do in the court
below, as will be seen from the large mass of incompetent
testimony introduced, and to the introduction of which
counsel for appellee objected strenuously throughout the
entire trial.   The arbitrators themselves were called upon
to testify, with a view of impeaching their own award, and
to disclose the grounds upon which they founded their
award, all of which was clearly incompetent.   Anderson v.
Dorsey, 18 Ves. Jr. 447.   Cald. on Arb. 222.   And even
in cases where fraud is charged, mere preponderance of
testimony against the award, or where the proof is conflict-
ing concerning it, will not justify its being set aside.   Ben-
nett v. Russell, 34 Miss. 524 ; Hurdeman v. Benge, 10 Ga.
202 ; 5 Barb. (N. Y.) 445.

SIMRALL, J. :

These litigations between Bridgeford, Jenkins, Robert-
son and Marshall, a building committee on behalf of a

masonic lodge, and M. C. Meagher, a master mechanic and contractor, grew out of a contract for the erection of a masonic edifice, for lodge and school purposes.  The committee complained that Meagher did not complete the building according to plan and specifications, but violated his contract by using bad materials in part of the work, and ceased work without their fault, leaving the house in an unfinished condition.  Meagher insists that he was willing to comply with his contract, but was compelled by the committee to desist.  Without particularizing the several matters brought into the litigation, it is enough to state that all the subjects embraced in the suits, constituting the differences between the litigants, were, by agreement, referred to arbitration, each executing to the other a bond, engaging to abide by and perform the award; "which shall be final between the parties of all controversies growing out of said contract, or connected with the same, both parties agree to pay such sum forthwith as may be adjudged against either, the award to be made a rule of court."  *  *  *  Such is the stipulation of the submission.  The award was filed in court, whereupon Meagher moved that it be accepted and have the effect under the statute of a decree.  Bridgeford and his associates took sundry exceptions, going to its validity, which were overruled, and Meagher's motion prevailed.

The assignment of errors brings into review the exceptions taken to the award and the decision of the court upon them.

The trial before arbitrators, or an umpire, and their award, is *quasi* judicial.  They are judges selected by the contestants instead of the ordinary judicial tribunal, and the determination as to its conclusiveness stands very much on the footing of the judgment of a court.  The submission in this case is very broad, it referred all matters in dispute, both law and fact, and the rights of parties are narrower than in judicial trials, for there is no review or correction of errors of the judgment, either upon the law or facts, nor indeed would the arbitrators be absolutely barred by the strict law

of the case. They might proceed altogether on views of what was right and just between the parties without following either the rules that would govern a court of law or equity in the circumstances.

It is not legitimate, therefore, in exceptions to the award, to inquire into the original merits in favor of the one party or the other, or to show that in the evidence the award ought to have been different, or that the law of the case was misconceived or misapplied, or that the decision, in view of all facts and circumstances, was unjust.

The exceptants must plant themselves upon other grounds, as that the arbitrators exceeded their authority, or misbehaved by refusing to hear evidence that was offered, or gave no opportunity to the litigants to be present, in person, and with their witnesses, or that they acted with partiality and corruptly. The declaration in art. 3, Code 1857, p. 371, that the "award shall not be invalidated, except it shall be made to appear that it was procured by corruption or other undue means, or that there was partiality or misbehavior in the arbitrators or umpires, or any of them," is an iteration of the doctrines which had been well established in the courts. If there be no reservation in the submission, the contestants are taken to agree that every question, both of law and fact, is to be included in the arbitration; collaterally and by evidence *aliunde,* the award is unimpeachable for mistake of law or fact, unless there be fraud or misbehavior in the arbitrators. Knox v. Symonds, 1 Ves. Jr. 369 ; Chace v. Westman, 13 East, 358 ; 2 Story's Eq. Juris., § 1454 ; 2 Johns. Ch. 339 ; ib. 551 ; Upshaw v. Hargrove, 6 Smedes & Marsh. 292.

The exceptions to the award resolve themselves into two or three propositions : 1st. Want of notice to the parties ; 2d. Partiality ; 3d. That the testimony was not laid before the umpire ; 4th. One of the arbitrators did not sign the award. In Upshaw v. Hargrove, *supra,* there is an intimation of opinion that, where the submission is not under rule of the court, notice is not necessary. In this case the contestants

had notice, and some of the exceptants were present before the arbitrators, and also before the umpire. We give no opinion as to whether notice was necessary or not.

The testimony shows, quite satisfactorily, that neither the arbitrators nor the umpire declined to hear any testimony that was offered. The arbitrators laid before the umpire the papers and facts in evidence. If the exceptants had desired the umpire to hear the witnesses, and not rest upon the report of the arbitrators, they ought at the time to have so notified him ; the difference was not so much in the statement of the evidence itself by the respective arbitrators, as in their deductions from it. The award will not be set aside because the witnesses were not examined on oath. Rydeat v. Pye, 1 Bos. & Pul. 91. Or that the umpire came to his conclusion on the report of the arbitrators without examining the witnesses (Hall v. Laurence, 4 T. R. 589 ; Watson on Awards, 170) unless there was a request that there should be such examination.

It is more regular for the umpire alone to sign the award, as it is his decision which the contestants have obligated themselves to inspect (if the arbitrators do not agree) ; the circumstance that one of the arbitrators signed with him does not the less make it his award or vitiate it.

The testimony fails to indicate corruption or partiality on the part of the arbitrator or umpire. There may have been some indiscretions, but nothing of the gravity to taint their conduct, or that of either of them, with corruption.

*Judgment affirmed.*