# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-00610-SCT

*BAILEY BRAKE FARMS, INC.*

*v.*

*GEORGE CALVIN TROUT AND RON NASSAR*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2011 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAK MCGEE SMITH |
| | GREGORY M. HUNSUCKER |
| | J. RHEA TANNEHILL, JR. |
| ATTORNEYS FOR APPELLEES: | GRADY F. TOLLISON, JR. |
| | CAMERON MORGAN ABEL |
| | THOMAS ROY TROUT |
| | ROGER H. MCMILLIN, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED - 05/23/2013 |
| MOTION FOR REHEARING FILED: | 03/15/2013 |
| MANDATE ISSUED: | |

### BEFORE WALLER, C.J., LAMAR AND KITCHENS, JJ.

### KITCHENS, JUSTICE, FOR THE COURT:

¶1.     The motion for rehearing is denied.  The original opinion is withdrawn, and this opinion is substituted therefor.

¶2. The plaintiffs, two shareholders of a closely held corporation, attempted to tender their shares to the corporation pursuant to a buy-sell agreement. Dissatisfied with the corporation's offer to purchase, the two shareholders sought relief in the Lafayette County Chancery Court, and the court submitted the matter to binding arbitration to determine the stock's value as required by the contract. However, the chancellor rejected the arbitrators' valuations and ordered the corporation to buy the plaintiffs' stock at a much higher purchase price. The corporation has appealed the chancellor's rejection of the arbitration award, and the plaintiffs have cross-appealed, claiming that they were entitled to additional damages, including prejudgment interest. Finding no legal basis for setting aside the arbitration award, we reverse the chancery court and reinstate the arbitration award.

### Facts and Procedural History

¶3. Bailey Brake Farms, Inc., owns several hundred acres of land in Tallahatchie County, Mississippi. Bailey Brake leases the hunting rights to Bailey Hunting and Fishing Association, Inc., a nonprofit corporation which operates as a hunting club for the shareholders of Bailey Brake. Both corporations were formed on the same day in 1992 by seventeen, self-described "well-educated duck hunters."

¶4. Each shareholder executed an identical Stock Subscription Agreement and a Buy-Sell Stock Restriction Agreement with Bailey Brake. These agreements required the shareholders to purchase 100 shares by annual subscription payments paid over an eleven-year period. If a shareholder wished to transfer or sell his interest, any offer of sale had to be presented first to the corporation and then to the individual shareholders. The agreements prescribed fixed repurchase prices for the first five years; but, after the fifth year, the price was to be the

2

"fair market value" as established by the shareholders. If the transferring shareholder and the corporation could not agree on the purchase price, the contract provided that "the value of each share of the Corporation shall be determined by arbitration," and "this value shall be binding on the Corporation and the Shareholders and their representatives."

¶5.     In 1997, shareholder Ron Nassar notified Bailey Brake that he wished to sell his shares. Nassar and Bailey Brake could not agree on a purchase price, and, after four years, the dispute was unresolved. On May 19, 2001, Nassar, joined by fellow shareholder George Calvin "Bud" Trout, sought to tender his shares to Bailey Brake and ceased payment of all assessments and dues. On February 7, 2002, Nassar and Trout filed a complaint against Bailey Brake in the Lafayette County Chancery Court for declaratory and injunctive relief. Specifically, the plaintiffs requested that the court "declare [the] plaintiffs' rights as shareholders" and "enjoin the defendant corporation from denying plaintiffs equal benefits of the profits and benefits of the corporation."

¶6.     After six years of litigation, on February 15, 2008, the chancellor entered an agreed order appointing a special master to make recommendations of findings of fact and conclusions of law on "all issues." The special master recommended that the court enforce the arbitration provision, with the arbitrators determining the fair market value of the stock as of May 19, 2001, the date Nassar and Trout attempted to tender their shares to Bailey Brake. The report also concluded that the plaintiffs were not entitled to prejudgment interest because they had failed to request such relief in their complaint.

¶7.     The chancellor accepted the special master's findings and recommendations in their entirety and in a written order declared that "[t]his is a temporary or interlocutory judgment

3

with the Court retaining jurisdiction for entry of a future final judgment after a value for the stock has been ascertained through the procedures for determining value as expressed in Article IV of the Buy-Sell Stock Restriction Agreement."

¶8.    The matter proceeded to arbitration before two arbitrators, one appointed by each side. On November 2, 2010, the arbitrators issued their decision, finding that, before deducting any unpaid "assessments," the fair market value of Nassar's interest was $47,235.88, and the fair market value of Trout's interest was $45,323.88.[1]  The arbitrators agreed that the plaintiffs should bear their share of "reasonable and necessary" assessments which had enhanced and improved the property, but they could not agree on an amount.  The arbitrators suggested that the parties submit this issue to the court or appoint a third arbitrator to resolve the issue of the assessments.

¶9.    The plaintiffs then moved the chancery court to add a third arbitrator or, in the alternative, to reconsider the arbitration award.  At a hearing on this motion, the defendant agreed to waive the assessments, their value being the only issue not resolved in arbitration. On March 24, 2011, shortly after the hearing, the trial court entered its final order, allowing the defendant to waive the assessments but finding that the arbitrators had submitted "an incomplete decision," and that "conflicting documents submitted for the valuation of the shares indicate the valuation to have been based on undue means."  The order then outlined the court's own method of valuation and ordered Bailey Brake to pay $157,586.67 to Nassar and $155,666.67 to Trout, roughly three times the amount of the arbitration award.

_____

[1]The $1,912 difference represented the outstanding amount owed by Trout under the stock subscription agreement.

**Issues**

¶10. Bailey Brake claims that the chancellor exceeded his authority by disregarding the arbitrators' valuation, because arbitration awards can be modified or vacated only on very narrow grounds, and no such grounds were present in this case. Bailey Brake takes issue with the chancellor's adopting, verbatim, an order submitted by the plaintiffs and allegedly failing to review any evidence before issuing the final order. The defendant also argues that, notwithstanding the trial court's limited authority, the chancellor did not apply the proper accounting principles in valuing the shares, and that the plaintiffs were judicially estopped from seeking a modification of the arbitrators' decision. Given the lack of evidence and specific findings from the chancellor, we agree with Bailey Brake that the arbitration award should not have been disturbed.

¶11. The plaintiffs assert on cross-appeal that the chancellor erred by denying their motion to amend their complaint to include additional claims and damages, and erred by failing to award them prejudgment interest pursuant to the parties' Buy-Sell Stock Restriction Agreement. We find the chancellor did not abuse his discretion in denying the plaintiffs' motion to amend, which was filed five and a half years into the litigation. Moreover, despite the plaintiffs' assertion to the contrary, the parties' Buy-Sell Stock Restriction Agreement does not entitle the plaintiffs to prejudgment interest in this instance. Therefore, we find the plaintiffs' cross-appeal to be without merit.

## I. Bailey Brake's Direct Appeal

¶12. As an initial matter, the plaintiffs attempt to persuade this Court that the contract contemplated an appraisal rather than arbitration. Citing *IP Timberlands Operating Co. v.*

***Denmiss Corp.***, 726 So. 2d 96 (Miss. 1998), the plaintiffs claim that the arbitration provision of the Buy-Sell Stock Restriction Agreement simply established a valuation method and was not intended to result in a final, binding judgment. Therefore, according to the plaintiffs, the decision to adopt the valuation of the arbitrators was wholly within the chancellor's discretion.

¶13.    As the defendant correctly notes, in ***IP Timberlands***, 726 So. 2d 96, this Court rejected the same argument that the plaintiffs now make. The contract in ***IP Timberlands*** called for a price to be fixed by "arbitrators." ***Id.*** at 104. This Court explained that the terms "arbitration" and "appraisal" have distinct, well-defined meanings, and that the parties, described as "knowledgeable and experienced timber companies," could have used the term "appraisers" had they intended an appraisal rather than binding arbitration. ***Id.*** at 106-07. The defendant also notes that, until now, the plaintiffs persistently pursued *arbitration* of their claims, not appraisement. Given the plaintiffs' repeated pleas in the chancery court for arbitration, their claim is even less persuasive than the similar argument rejected in ***IP Timberlands***.

¶14.    Additionally, the plaintiffs have never argued that the arbitration provision was invalid under the law of contracts (*e.g.*, that the arbitration provision was a result of unequal bargaining power). *See **Adams Cmty. Care Center, LLC v. Reed***, 37 So. 3d 1155, 1158 (Miss. 2010) ("To determine whether there is a valid arbitration agreement, we apply the law of contracts.") (citation omitted)); ***Marcoin, Inc. v. Hammond***, 368 So. 2d 1257, 1259 (Miss. 1979) ("Where there is grossly disproportionate bargaining power, the principle of freedom to contract is nonexistent and unilateral terms result.") (citation omitted)). Because the

6

valuation was an arbitration award, as contemplated by the legally valid and binding contract, it is binding on the parties absent very narrow circumstances which are prescribed by statute. *Margerum v. Bud's Mobile Homes, Inc.*, 823 So. 2d 1167, 1170 (Miss. 2002) (quoting *Hutto v. Jordan*, 204 Miss. 30, 39, 36 So. 2d 809, 810 (1948)); Miss. Code Ann. § 11-15-23 (Rev. 2004). This Court has long acknowledged that arbitration "might proceed altogether on views of what was right and just between the parties without following either the rules that would govern a court of law or equity in the circumstances." *Craig v. Barber*, 524 So. 2d 974, 977 (Miss. 1988) (quoting *Hutto*, 36 So. 2d at 811; *Jenkins v. Meagher*, 46 Miss. 84 (1871)). Thus, when competent and fully informed parties expressly contract to arbitrate their disputes, their rights are "narrower than in judicial trials, for there is no review or correction of errors of the judgment, either upon the law or facts . . . ." *Hutto*, 36 So. 2d at 811 (quoting *Jenkins*, 46 Miss. 84). *See also Adams Cmty. Care Center*, 37 So. 3d at 1158; *Marcoin, Inc*, 368 So. 2d at 1259.

¶15. In this case, the chancellor held, without explanation, that the award was reached by "undue means," and that the decision was incomplete as contemplated by Mississippi Code Section 11-15-23. The relevant portions of this statute provide:

> Any party complaining of an award may move the court to vacate the same upon any of the following grounds:
>
> (a) That such award was procured by corruption, fraud, or undue means;
>
> . . . .
>
> (d) That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final, and definite award on the subject matter was not made.

7

Miss. Code Ann. §11-15-23 (Rev. 2004). Thus, although undue means and unresolved issues can be valid reasons for setting aside an arbitration award, the court's order provided no basis for these findings. The order's only analysis in this regard is as follows:

> The Court ordered that the stocks of the Plaintiffs be valuated by two arbiters. The two arbiters have submitted an incomplete decision on the valuation.

> Documents on which to base the valuation and submitted to the arbiters conflicted. The Court finds that the conflicting documents submitted for the valuation of the shares indicate the valuation to have been based on undue means.

The remainder of the order outlined the chancellor's valuation assessment, but did not articulate why the arbitrators' decision was incomplete or what "undue means" were employed to procure the award.

¶16. The arbitrators' written decision detailed the evidentiary basis and reasoning behind the decision. They concluded that one of the two appraisals submitted by the parties was more reliable, discounted the stock's value based on limited marketability and minority interest, found that, on the date in question, there were sixteen stockholders, and followed the court's previous order to deduct "dues" of $21,900 from each plaintiff's share. Although the chancellor ultimately disagreed with all these findings, he failed to articulate any "undue means" utilized or any specific deficiencies with the arbitrators' thorough analysis and valuation methods.

¶17. As for the chancellor's finding that the arbitrators submitted an "incomplete decision," we can but guess that he was referring to the arbitrators' disagreement and indecision over what amounts of deductions were due to "assessments." Yet, even if we did make such an

8

assumption, the final order explicitly stated that "[t]he Court will allow the Corporation to withdraw its submission of assessments." With no dispute over assessments, nothing about the arbitrators' decision was "incomplete."

¶18. Bailey Brake gives several alternative reasons for reversal, but none is as compelling as the chancellor's having exceeded the narrow authority that permits judicial review of arbitration awards. The chancellor's order disregarded longstanding Mississippi jurisprudence that "every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Craig*, 524 So. 2d at 977 (quoting *Hutto*, 36 So. 2d at 811). We find that the chancellor incorrectly substituted his own judgment for the arbitration award and treated it as if it was a recommendation from a special master. Thus the chancellor erred in setting aside the arbitration award, and the arbitrators' decision must be reinstated.

**II. Nassar's and Trout's Cross-Appeal**

¶19. The main contention of the plaintiffs' cross-appeal is that the chancellor erred by denying their motion to amend their complaint. Once the defendant had filed its answer, the plaintiffs could amend their complaint "only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires." M.R.C.P. 15(a). On appeal, "[w]hen considering a trial court's decision to grant or deny a motion to amend a pleading, the standard of review is abuse of discretion." *Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (Miss. 2010) (*Pratt v. City of Greenville*, 804 So. 2d 972, 978 (Miss. 2001)). While Rule 15 states that an amendment "shall be freely given when justice so requires," absent a mistake of law, which is subject to *de novo* review, the plaintiffs have a heavy burden to overcome.

9

¶20. On November 13, 2007, five and a half years after filing their complaint, the plaintiffs moved to amend their complaint to add new causes of action, including breach of contract, breach of fiduciary duties, and breach of good faith and fair dealing. The amendment sought actual damages, punitive damages, prejudgment interest from the date of the breach, attorneys' fees, and costs.

¶21. Bailey Brake responded that the amendment sought to change the very nature of the litigation, transforming their initial request for equitable relief into a stockholder's derivative action that should have been filed in circuit court. The defendant also claimed that the amendment would be highly prejudicial because a key witness to its defense of these new claims had died. Bailey Brake asserted that all of the alleged facts underlying the new claims existed and were known to the plaintiffs at the time of their original complaint, and that the motion was an attempt to bypass the statute of limitations.

¶22. The plaintiffs have offered little explanation for waiting five and a half years to amend their complaint, an amendment that would have changed the nature of their case from a case in equity to an action at law. Absent extraordinary circumstances, we will affirm the denial of a motion to amend if a party has "had ample opportunity and time to amend its complaint, and has offered no justification for why it did not do so." **Barry v. Reeves**, 47 So. 3d 689, 695 (Miss. 2010) (quoting **Webb v. Braswell**, 930 So. 2d 387, 393 (Miss. 2006)). "Applications to amend the pleadings should be prompt," and a lack of diligence is not a compelling reason to amend. **Id.** (citations omitted).

¶23. The plaintiffs' main assertion appears to be that intentional delays in the litigation, caused by the defendant, rendered their initial demands for relief inadequate. The plaintiffs

10

do not articulate specific examples of bad faith on the part of the defendant that would warrant such a drastic change to their initial claims. Moreover, the law provides remedies for intentional dilatory conduct. *See e.g.*, M.R.C.P. 37(b) (allowing sanctions for failing to comply with discovery). The plaintiffs had adequate means to remedy any alleged bad faith in the defendant's conduct of the litigation, and a motion to amend, five and a half years after their initial complaint, was not a proper avenue for relief.

¶24. Further, the special master's report and recommendations, later adopted *in toto* by the chancellor, actually addressed the breach of contract claim and resolved the issue in the plaintiffs' favor. The special master found that Bailey Brake did not comply with the contractual terms following the plaintiffs' tendering their stock on May 19, 2001. The special master noted that the contracts did not require the corporation to purchase the tendered shares. However, to remedy its breach of the contract, the special master recommended that Bailey Brake be *required* to purchase the plaintiffs' shares at an amount determined in arbitration. According to the chancellor, an adequate measure of damages for the corporation's breach of contract was the fair market value of their shares as of May 19, 2001.

¶25. As for prejudgment interest, the special master, and ultimately the trial court, correctly ruled that prejudgment interest was not available without having been pled in the initial complaint. *Upchurch Plumbing, Inc. v. Greenwood Utilities Comm'n*, 964 So. 2d 1100, 1118 (Miss. 2007). The plaintiffs rely on *Upchurch* to argue that such specificity is not required to be pled for the court to award prejudgment interest. Yet *Upchurch* simply holds that "Rule 8 does not require that a party seeking prejudgment interest must plead the specific

11

date on which the prejudgment interest allegedly is due," and does not abrogate the requirement "that a party assert a demand for prejudgment interest in the appropriate pleading." The initial complaint prayed for declaratory and injunctive relief and "general relief." A request for "general relief" in a complaint seeking equitable relief would not give the defendant notice of a claim for prejudgment interest. M.R.C.P. 8.

¶26. As an alternative, the plaintiffs argue that Article V of the Buy-Sell Stock Restriction Agreement entitles them to prejudgment interest at a rate of ten percent per annum from the date of the defendant's breach. However, the trial court correctly recognized that this provision does not apply. Article V applies only when Bailey Brake has agreed to purchase a shareholder's stock at an arbitrated value and then is thirty days late on a payment. Since the value of the stock was still in dispute, no payments were due from Bailey Brake; thus, the contract did not entitle the plaintiffs to prejudgment interest. For these reasons, the plaintiffs' cross-appeal is without merit.

**Conclusion**

¶27. The chancellor granted the plaintiffs' request to enforce the arbitration provision, but, dissatisfied with the outcome, the plaintiffs successfully moved for a judicial increase in their award. Although the chancellor cited "undue means" and an incomplete award as justifications for judicial review, he provided insufficient explanation for these conclusions, which we find are unsupported by the record. Because the chancery court was without the authority to set aside the arbitrators' decision, we reverse the chancery court's final order and render judgment here in favor of Bailey Brake Farms, Inc., reinstating the arbitration

award.  The defendant's waiver of assessments shall remain undisturbed.  On cross-appeal,

we affirm.

¶28.     **ON DIRECT APPEAL: REVERSED AND RENDERED.   ON CROSS-APPEAL: AFFIRMED.**

      **WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.  DICKINSON, P.J., NOT PARTICIPATING.**