J. H. Leavenworth & Son, Inc., et al. v. Kimble.

(Division B. May 19, 1930.)

[128 So. 354. No. 28505.]

Ernest Kellner, Jr., of Greenville, for appellants.

464

**D. S. Strauss,** of Greenville, for appellee.

**Emmet Harty,** of Greenville, for appellee.

**W. A. Percy,** of Greenville, amicus curiae.

Argued orally by **Ernest Kellner,** for appellant, and by **D. S. Strauss** and **Emmet Harty,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee was in the employ of appellants under a profit-sharing agreement. A dispute arose between them about the compensation due under the employment as regards the subject of a certain contract of sale hereafter to be mentioned and as to the manner of payment thereunder. On December 17, 1928, the parties submitted the controversy to arbitrators, and the stipulation touch-

ing the subject-matter is in the following words: "The subject-matter to be submitted to the arbitrators for award is the sum of money due R. V. Kimble from either J. H. Leavenworth & Son, Inc., or George Leavenworth, or which may be due him on the consummation of the contract of sale and merger made between J. H. Leavenworth & Son, Inc., and the Chicago Mill & Lumber Corporation, or Horton Richards & Co., Inc."

The arbitrators knew nothing of the said subject-matter when they accepted their appointment, but as soon as they had entered upon their duties, they ascertained that the said sales and merger contract was in three parts, one part of which had been consummated at the time of the submission, but as to the second and third parts, these were only options which the proposed purchasers were not bound in any event to exercise and which, if they did exercise, could not, as to the second part, be consummated prior to January 1, 1929, and as to the third part, might not be prior to December 31, 1931. The arbitrators were therefore at once confronted with the proposition that to deal in all respects finally with the said second and third parts, they would have to assume either that these options would be exercised when it might happen that they would not be consummated, or else to assume that the options would not be exercised, whereas the events of the future might result in the very opposite of that assumption. Of course, if the options were exercised and the same were consummated there would be further profits to be shared, otherwise not.

The arbitrators therefore proceeded to make an award, finding in favor of appellee as to all parts of the contract which had been consummated and in so far fully as the several component items had matured into a reality; and as to all further parts and items, which depended upon the unknown and unknowable events of the future, they made an award of the principles upon which these future accruals, if any, should be computed and allowed; and

said award, having been produced before the court, was by the court, over the objections of appellants, confirmed.

The objections to the award, and the only objections, are: (1) That the arbitrators exceeded their powers, and (2) that they so imperfectly executed them that a mutual, final, and definite award on the subject-matter was not made. See paragraph (d), section 107, Code 1906, section 94, Hemingway's 1927 Code. The argument of appellant on the first objection is that the subject-matter submitted to the arbitrators was the entire contract of sale and merger, and that when the arbitrators undertook to make an award final only as to the items that had matured and have become existing realities, and did not make a like final award, so called as to the future features, they exceeded their powers. It is manifest, however, that this objection goes not to the first, but rather to the second, ground as above stated. Thus the assigned grounds may be considered together.

It is the settled general rule that "it is essential to the validity of an award that it shall be final and complete, responsive to all the matters of difference included in the submission." Rhodes v. Hardy, 53 Miss. 592. But since every rule must be given such an interpretation that it may have a sensible and practical operation, there is the essential qualification upon that rule that where the arbitrators have done everything that they could do, upon the matters submitted, to make an award final, and the award is therefore "as final as the nature of the thing [submitted] will admit of, it is sufficient." Borretts v. Patterson, 1 N. C. 126, 1 Am. Dec. 576. "There is nothing peculiar in the rules of interpretation applied to agreements to submit to arbitration. As in the case of all agreements the courts seek to give effect to the intent of the parties. . . . It is possible for the parties in the agreement to limit the scope of the arbitration in any way that is desired." 2 R. C. L., pp. 365, 366. To these statements we add a quotation taken from the recent case Rayl v. Thurman (Miss.), 125 So. 912, 914: "And, since

parties must be presumed to have acted in good faith—and in a matter of this kind they will not be heard to aver to the contrary—it must be held that in the submission they assented to that which would make the submission valid." To which we now add, further, that in a submission to arbitration, the intent of the parties in making the submission must be construed as such that it is possible for the arbitrators to act justly within the terms of the submission, and as to this also, the parties will not be heard to say to the contrary.

The objection here is that the arbitrators have not made a complete and final award within the subject-matter submitted, because they did not finally fix the exact sums to be recovered, or did not or the other hand finally reject any claims for said sums, as the proceeds of the exercise in the future of the options in the sale and merger contract, and did not likewise fix or reject as to the several other future and immature items urged before the arbitrators. How were the arbitrators to act justly with respect to these future features otherwise than they did act? Were the arbitrators to wholly reject any claim or interest of appellee in the second and third items of the sales and merger contract on the assumption that the options would not be exercised, when only the future can reveal whether this will be true or not? On the other hand, were they to allow a present fixed sum on the assumption that the options would certainly be exercised and the profits to be derived therefrom would be gained, when it might turn out in the future that no such would happen? How could the arbitrators within justice have acted on either one or the other of such assumptions? These questions answer themselves, and the parties well knew these answers when they made their agreement of submission, and well knew that within the boundaries of justice the arbitrators could, as to these future matters, do no more than they did do, to-wit, outline the principles of the award and leave the facts, as of necessity they must be left, to be applied to

the principles as those facts should in the future come into existence.

To uphold the objections made here would be to allow a party, who knows or ought to know the inherent limitations of the subject-matter as respects the possibility, within justice, of any complete and final determination, to submit to arbitration, and if the result did not suit him, then to avoid the award because it did not undertake to do the impossible and to cover all future features as if all that the unknown future holds in suspense had already happened. This would allow the parties, or one of them, to pretend in such a case to submit to arbitration, but without any binding force. Every principle of procedural law as well as those of good faith and fair conduct would condemn such an allowance, and it cannot be permitted.

Affirmed.