# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-00301-SCT

*JERRY ROBINSON, ESTATE OF ROBERT D.
ROBINSON, JERRY G. ROBINSON MARITAL
TRUST, AND TRI-STATE BRICK & TILE
COMPANY, INC.*

*v.*

*ROBERT HENNE, HILDA HENNE ABBOTT,
LINDA HENNE AND JODIE HENNE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2011 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRED L. BANKS, JR. |
| | ROBERT GREGG MAYER |
| ATTORNEYS FOR APPELLEES: | JOHN BRECKENRIDGE HUNT, IV |
| | SHANE F. LANGSTON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 06/20/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     As a result of ongoing negotiations during trial regarding the ownership of a company,

the two parties agreed to a compromise and apprised the circuit court of their agreement. The

general terms of the agreement were contained on pieces of legal-pad paper and submitted

to the court with the understanding that a subsequent formal agreement would be

forthcoming. When a dispute arose as to a provision in the subsequent proposed formal

agreement regarding the applicability of a condition precedent requiring the consent of a third-party creditor, the issue was submitted to an arbitrator. The arbitrator found the initial, handwritten agreement, which did not contain the third-party consent clause, to be binding and enforceable. The issue before the Court is whether the arbitrator's decision should be vacated due to his refusal to consider parol evidence of the condition precedent. Finding no statutory grounds to disturb the arbitrator's decision, we affirm the trial court and the arbitrator.

## FACTS AND PROCEDURAL HISTORY

¶2.     Tri-State Brick & Tile Company was formed by R.H. Robinson. Upon his death, all issued common stock was bequeathed to his son, Robert; all preferred shares, representing forty-eight percent ownership of the company, went to his daughter, Martha. The appellees, Robert Henne, Hilda Henne Abbott, Linda Henne, and Jodi Henne, are Martha's heirs. Upon Robert's death, the common shares, as well as operational control of the company, passed to the appellants, Jerry Robinson, the Jerry G. Robinson Marital Trust, and Robert's estate.

¶3.     After the Hennes discovered what they thought to be improper distribution of constructive dividends to the majority shareholders, they brought suit in Hinds County Circuit Court against Robinson on April 22, 2008. The trial began on July 11, 2011. On the fourth day of the trial, the parties reached a settlement. Counsel for the parties wrote the terms of the agreement on a legal pad, which was deemed the "term sheet," and the parties asked that it be sealed by the court. Counsel for the Hennes also stated that the term sheet contained "general terms" and that the term sheet would be "subject to a more specific agreement to be executed by all parties." The parties agreed that any dispute in the

2

agreement would be submitted to an arbitrator mutually agreed upon, or if not, one selected by the court.

¶4. On July 22, 2011, counsel for the Hennes circulated a draft of the final formal agreement to counsel for Robinson. Counsel for Robinson agreed that the draft formal agreement was accurate except for some issues regarding carried-forward losses. Included in the draft was a provision stating that effectiveness of the agreement was conditioned on the approval of Trustmark – the third party creditor. On July 29, 2011, Trustmark informed all parties that it would not consent to the agreement. Following Trustmark's decision, the Hennes suggested that all parties move forward based upon what was in the term sheet, which did not include the Trustmark consent clause. Counsel for Robinson responded that Trustmark's consent had been considered an essential element of any settlement and refused to sign the formal agreement without the consent provision. In support of his reasoning, Robinson cited the fact that the term sheet required Trustmark's release of Robinson from certain obligations, which could not be implemented without Trustmark's consent. In response, the Hennes moved to appoint an arbitrator.

¶5. The arbitrator found that the term sheet constituted an enforceable agreement because there was a meeting of the minds as to the terms contained therein, the terms were unambiguous, and the agreement did not include a consent provision. Robinson, alleging that parol evidence should have been considered regarding the consent clause, moved for reconsideration. Upon reconsideration, the arbitrator found Robinson to be correct in his assertion that parol evidence should be considered in determination of whether there was a meeting of the minds. However, he maintained that the term sheet constituted an enforceable

3

agreement and failed to address the consent clause issue. On December 21, 2011, the trial court affirmed the arbitrator's finding and entered final judgment on behalf of the Hennes. Robinson timely appealed.

## STANDARD OF REVIEW

¶6.    The level of review afforded to the decision of an arbitrator is quite narrow and provided by statute. *Craig v. Boren*, 524 So. 2d 974, 977 (1988); Miss. Code Ann. § 11-15-23 (Rev. 2004). An arbitration award may be overturned only if the elements of the applicable statute are present. *Wilson v. Greyhound Bus Lines, Inc.*, 830 So. 2d 1151, 1157 (¶16) (Miss. 2002).

## DISCUSSION

¶7.    Robinson does not dispute the arbitrator's conclusion that there was a meeting of the minds regarding the general agreement contained within the term sheet; rather, he argues that the arbitrator was plainly wrong in failing to consider the condition precedent – the approval of Trustmark. Even if the arbitrator reached the wrong conclusion of law in his failure to consider the condition precedent, the Court has held that a mistake of law or of fact is not sufficient reason to overturn an arbitrator's decision. "[T]he general rule is that [arbitrators] are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either." *Hutto v. Jordan*, 36 So. 2d 809 (Miss. 1948). The only basis recognized for reversal of an arbitrator's decision is a violation of the appropriate statute. *See Wilson*, 830 So. 2d at 1157 (¶16).

¶8.    Robinson alleges that the arbitrator violated subsections (a) and (d) of Section 11-15-23 of the Mississippi Arbitration Act and asserts the Doctrine of Manifest Disregard in

4

support of his argument. Though the Court has never directly addressed the applicability of the doctrine, our previous rulings direct us to conclude that it does not apply under Mississippi law.

¶9.    Mississippi Code Section 11-15-23 provides the four grounds upon which an arbitrator's decision may be vacated:

(a)    That such award was procured by corruption, fraud, or undue means;
(b)    That there was evident partiality or corruption on the part of the arbitrators, or any one of them;
(c)    That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent or material to the controversy, or other misbehavior by which the rights of the party shall have been prejudiced;
(d)    That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final, and definite award on the subject matter was not made.

Miss. Code Ann. § 11-15-23 (Rev. 2004).

¶10.    The statute is identical to the corresponding provision in the Federal Arbitration Act ("FAA"). 9 U.S.C. §10. The statutory language was developed in part by the American Arbitrators Association and was adopted verbatim by both Congress and the majority of jurisdictions. The standard requires substantial deference to the arbitrator.

¶11.    Realizing that the standard allowed for a highly limited review of an arbitrator's decision on appeal, the majority of jurisdictions and federal courts that considered the doctrine's viability adopted the Doctrine of Manifest Disregard throughout the latter half of the Twentieth Century as a judicial remedy for the restrictive statutory language. Essentially, the doctrine provides an avenue for courts to overturn an arbitrator's findings if there was a

5

deliberate or unquestionable misapplication of law. By 2008, nineteen jurisdictions[1] and every federal circuit court had adopted some version of Manifest Disregard.[2]

¶12.     In 2008 the United States Supreme Court made an ambiguous statement regarding Manifest Disregard. *See **Hall Street Assocs. v. Mattel, Inc.**,* 552 U.S. 576 (2008). Although the doctrine was not the basis for the parties' dispute, the Court cogitated upon the essence of the doctrine and from where it emanated. "Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. . . . Or . . . 'manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4). . . ." ***Id.*** at 585 (internal citations omitted). What the United States Supreme Court made clear, however, is that the doctrine could not be used as grounds for vacating an arbitrator's award separate and apart from Sections 10 or 11 of the FAA. ***Hall Street***, 552 U.S. at 584 ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."). In other words, if the doctrine is to be employed, it must be found to exist within the words of the statute.

¶13.     As would be expected, the ***Hall Street*** opinion left federal courts with the task of answering the "maybe" questions regarding the doctrine that the Supreme Court had asked but not answered. Not surprisingly, courts have come up with many different explanations. In the federal circuit courts, the Fifth, Eleventh, and First Circuits have decided that ***Hall***

---

[1]Alabama, Connecticut, Delaware, District of Columbia, Georgia, Indiana, Kansas, Louisiana, Maryland, Missouri, Montana, Nevada, New Jersey, New York, Rhode Island, Texas, Utah, Vermont, and Wisconsin all adopted some form of the doctrine through their respective courts, with the exception of Georgia, which codified it.

[2]Some states have considered and rejected the doctrine. *See **Warbington Constr., Inc. v. Franklin Landmark, L.L.C.**,* 66 S.W. 3d 853 (Tenn. Ct. App. 2001).

*Street* completely abrogated the doctrine. *See Citigroup Global Markets, Inc. v. Bacon*, 562 F. 3d 349, 355 (5th Cir. 2009); *Frazier v. CitiFinancial Corp*., 604 F. 3d 1313, 1324 (11th Cir. 2010); *Ramos-Santiago v. United Parcel Service*, 524 F. 3d 120 (1st Cir. 2008). Conversely, the Second, Ninth, Sixth, and Seventh Circuits have found that the doctrine is still viable and lives within the words of the statute. *See Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp*., 548 F. 3d 86 (2d Cir. 2008); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415 (6th Cir. 2008); *Comedy Club Inc. v. Improv West Assocs.*, 553 F. 3d 1277 (9th Cir. 2009); *Affymax, Inc. v. Ortho-McNeil-Jansen Pharms., Inc*. 660 F. 3d 281 (7th Cir. 2011). The remaining circuits have not addressed the question since *Hall Street*.

¶14.   While *Hall Street* was a pronouncement regarding cases governed by federal law, several states began to evaluate the validity of the doctrine as well.  State courts have split on the question with some jurisdictions applying the reasoning to their own state arbitration statutes.  Texas, Alabama, and New York no longer recognize the doctrine, but California, Wisconsin, and Georgia still believe it to be valid.  *See* Michael H. Leroy, *Are Arbitrators Above the Law?* 52 B.C. L. Rev. 137, 181 (2011).  Mississippi, however, had stated long before *Hall Street* that the only basis for vacating an arbitrator's decision was a violation of the arbitration statute.  *Wilson v. Greyhound Bus Lines, Inc.*, 830 So. 2d 1151, 1157 (¶16) (Miss. 2002) ("[A]n arbitration award may *only* be overturned if the elements of the applicable statute are present.").  Robinson argues that the Court should adopt the doctrine and find that the arbitrator's error amounts to a violation of state law.  However, arbitration has existed in Mississippi for decades, and we have a well-developed body of law that strictly dictates our decisions when reviewing an arbitrator's decision.  As more fully set forth

7

below, per the statutes that govern our review, we cannot overturn the decision of an arbitrator for simple mistakes of law or fact, and to the extent that the Manifest Disregard Doctrine allows courts to do so, we may not adopt it.

¶15.    "[T]his Court has long acknowledged that arbitration 'might proceed altogether on views of what was right and just between the parties without following either the rules that would govern a court of law or equity in circumstances." *Bailey Brake Farms, Inc. v. Trout*, No. 2011-CA-00610-SCT, 2013 WL 2249413, at *3 (Miss. May 23, 2013) (quoting *Craig v. Barber*, 524 So. 2d 974, 977 (Miss. 1988)).  The reason for such limited review is because the Court traditionally has viewed arbitration agreements as tantamount to a settlement between the parties where the arbitration agreement would be the ". . . exclusive source of rights and liabilities of the parties." *Hutto*, 36 So. 2d at 812 (citing *Yarbro v. Purser*, 114 Miss. 75, 74 So. 425, 427 (Miss. 1917)).

¶16.    Our cases, including *Hutto*, *Barber*, and *Bailey Brake*, make clear that Mississippi's statute leaves no room for the doctrine.  In an attempt to prove otherwise, Robinson first asserts that Manifest Disregard falls within the definition of "undue means," as found in Section 11.  A similar case, with only slightly different facts, came before the Court recently in *Bailey Brake*.  There, as in the instant case, the respondent argued that the arbitrators' decision was contrary to the evidence before them, and that the chancellor was therefore justified in his declaration that the arbitrators had used undue means in reaching their conclusion.  *Bailey Brake*, 2013 WL 2249413, at *3.  Although the words "manifest disregard" were not explicitly used in the *Bailey Brake* opinion, the basis for the doctrine –

that a finding of error of law or fact failed to constitute "undue means" – was still present in the Court's decision. *Id*. at \*8.

¶17.    In Mississippi, we have always considered "undue means" to constitute some nefarious conduct on the part of the arbitrator – not simply an incorrect or sloppy conclusion of law. *McClendon v. Stewart*, 133 Miss. 253, 97 So. 547 (Miss. 1923).  Therefore, even if we were inclined to adopt the doctrine, Section 11-15-23(a) of the arbitration act is precluded from being the vehicle for its application because the record is void of any evidence of fraud or corruption on the part of the arbitrator.  Nearly ninety years ago, the Court made clear that "undue means" equals intentional malfeasance.  In *McClendon*, the appellant, an elderly woman, contested the findings of an arbitrator because she "did not receive justice." *McClendon*, 97 So. at 548.  Finding that there was no evidence showing the woman had been taken advantage of or forced into the agreement, the Court held that error alone was not sufficient to disturb the arbitrator's findings and would certainly not be considered "undue means." *Id*.  In the ten decades since *McClendon*,  nothing in our jurisprudence would lead us to believe undue means was related in any way to simple errors of law or fact, however egregious they may be.

¶18.    In addition to the "undue means" basis for overturning a decision, Robinson next asserts that the error in the arbitrator's decision is of such a nature that one could say the arbitrator exceeded his powers and executed them imperfectly in violation of Section 11-15-23(d).  However, Section 11-15-23(d) does not avail Robinson, either.  In *D'Angelo v. Hometown Concepts, Inc.*, 791 So. 2d 270, 272 (¶ 10) (Miss. Ct. App. 2001), the appellant urged the Court of Appeals to hold that an "evident miscalculation" would amount to an

9

arbitrator exceeding his powers. *Id.* The Court rejected the request and concluded that a lack of evidentiary basis was not sufficient reason for modifying an arbitrator's award, and that such action on the part of the arbitrator failed to constitute exceeding his powers. *Id.* Although the appellant in *D'Angelo* was seeking a modification of the award, the same reasoning applies to the vacatur of an award as well because the term "exceeded his powers" is found within the vacation statute. The Court reached a similar conclusion in *J.H. Leavenworth & Son v. Kimble*, 157 Miss. 462, 128 So. 354 (1930). The *Kimble* Court found that an arbitrator's conclusion, which may exceed or be more limited in scope than what one party intended, does not fit the definition of imperfect execution or of the arbitrator exceeding his powers. *Id.*

¶19.    In short, we consistently have held that a mistake of law, a mistake of fact, or a decision lacking an evidentiary basis is insufficient to constitute a violation of any of the four statutory categories that permit the vacatur of an arbitrator's decision. Nothing in the record or the briefs indicates that the arbitrator resorted to "nefarious means" to reach his decision, or that he in any way recognized by statute or caselaw exceeded his authority as arbitrator. Absent such a showing, and despite errors of law or fact by the arbitrator, if any, we must and do affirm.

## CONCLUSION

¶20.    To vacate the judgment of an arbitrator, there must be a violation of the arbitration statute. However, time and again, this Court has found that errors of fact and law do not constitute a violation of either subsections (a) or (d) of Mississippi Code Section 11-15-23. We therefore affirm the decisions of both the arbitrator and of the trial court.

10

¶21. **AFFIRMED**.

       **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, AND KING, JJ., CONCUR.**