# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00883-SCT

*WILLIAM L. PAINTER AND JOHN A. CHALK, JR.*

*v.*

*REGIONS INSURANCE, INC. d/b/a REGIONS INSURANCE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEYS: | KATIE HAMMETT HASSELL |
| | DOUGLAS L. McCOY |
| | MICHAEL B. WALLACE |
| | R. DAVID KAUFMAN |
| | LAUREN W. OAKS |
| | STEPHEN J. CARMODY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL B. WALLACE |
| | REBECCA L. HAWKINS |
| | LINDA FAYE COOPER |
| | DOUGLAS L. McCOY |
| | KATIE HAMMETT HASSELL |
| ATTORNEYS FOR APPELLEE: | R. DAVID KAUFMAN |
| | STEPHEN J. CARMODY |
| | LAUREN OAKS LAWHORN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Regions Insurance sued two former employees for violating their employment agreements. Most of the claims were arbitrated and the arbitrator found in favor of Regions.

The employees moved the circuit court to vacate the award, claiming the arbitrator exceeded his authority and engaged in "undue means," "misconduct,"or "misbehavior" that prejudiced their rights. The circuit court denied the motion and confirmed the award. The employees appeal. Finding no merit to their claims, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     William Painter and John Chalk both began working for Regions Insurance in 2007. In their employment contracts with Regions, Painter and Chalk agreed that they would not compete with or solicit customers or employees from Regions for two years following the end of their employment. They also agreed not to share any of Regions' confidential information with anyone. In Paragraph 6 of their contracts, they agreed that if they breached the restrictive covenants, they would be liable to Regions for, among other things, liquidated damages equal to twice any commissions they earned servicing former Regions customers for the two-year period following the end of their employment with Regions.

¶3.     On July 15, 2013, Painter and Chalk both resigned from Regions and immediately began working at Alliant Insurance Service. Regions sued Painter and Chalk three days later in Madison County Circuit Court, claiming that the two had breached their employment agreements and seeking to enjoin them from further breaching those agreements.[1]   In the complaint, Regions claimed, among other things, that "Painter and Chalk agreed to a liquidated damages provision" in their respective employment agreements, under which they

---

[1]Regions' claims against two other defendants—who also quit Regions to work for Alliant and allegedly breached similar employment agreements in the process—were stayed pending this arbitration and are not part of this appeal.

2

agreed to pay double the amount of any compensation for which they were "a procuring cause."

¶4. After a hearing, the trial court partially granted Regions' request for injunctive relief by prohibiting Painter and Chalk from soliciting, accepting, or servicing customers they had serviced in the prior two years while working for Regions. After a later modification, the injunction did not apply to customers who already had switched from Regions to Alliant. The trial court did not enforce a clause in the agreement which would have prevented Painter and Chalk from selling insurance anywhere in Mississippi or in several other cities where Regions operates.

¶5. The parties agreed to submit the remaining claims to binding arbitration, pursuant to a clause in the employment agreement that provided that "[a]ll disputes arising under this Agreement (other than claims in equity) shall be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Painter and Chalk selected William Larry Latham as the arbitrator. The arbitration took place from February 11 to February 14, 2014.

¶6. At arbitration, there was no dispute about the underlying facts, that Painter and Chalk had resigned from Regions and had begun working at Alliant. The arbitrator rejected a duress defense mounted by Painter and found that the employment agreements were enforceable and that Painter and Chalk had breached them. Specifically, the arbitrator found that "Painter and Chalk accepted and serviced Regions customers, competed with Regions

3

and, improperly used Regions' proprietary and confidential information, all in violation of their Agreement. It is this breach for which they must answer."

¶7.    During the arbitration, Regions' counsel asked Painter if he had sought legal advice before signing the employment agreement:

> Q. It is true, is it not, that prior to signing your agreements you shared those agreements with your personal lawyer, Mark Herbert?
> A. Yes, sir.
> Q. And you sought his advice about those agreements.  Correct?
> A. Yes, sir. I sought everybody's advise [sic] I could find about the agreement.

¶8.    After the arbitration closed, but before the arbitration award issued, Latham telephoned Mark Herbert.  According to Herbert's affidavit, Latham asked how long Herbert had been practicing and whether that practice had involved employment matters, specifically noncompete clauses. Latham next asked about taking judicial notice, as an arbitrator, of Herbert's expertise.  Herbert asked Latham if his questions were related to the Regions arbitration and Latham said they were. Then Herbert explained that he had told Painter he could not advise on the employment agreement because he had a conflict with Regions. Herbert told Painter about Latham's phone call.  Painter then told his arbitration counsel, who emailed Latham, requesting that he immediately resign as arbitrator without issuing the award.  Latham declined and later filed an affidavit explaining the phone call.

¶9.    The arbitrator issued the award on March 24, 2014. He awarded punitive damages because he found that "Painter and Chalk weighed their options and willfully, with calculated intent, violated their Agreement."  He also ordered Painter and Chalk to pay Regions' attorney's fees and arbitration costs.

4

¶10. In addition, the arbitrator awarded damages based on the formula the parties had agreed to in Paragraph 6 of their employment contracts, and he put in place a method whereby Regions could collect from Painter and Chalk. Tracking the language of the contract, the arbitrator ordered that any time Painter or Chalk was "a procuring cause, directly or indirectly, for any commission or other compensation," either to them or a company they work for, they would have to pay Regions "an amount equal to two (2) times such commission or compensation," if the compensation came from any customer Painter or Chalk had serviced during the two-year period before their resignation from Regions.

¶11. After Regions moved the trial court to confirm the arbitration award, Painter and Chalk moved to vacate the award based on two arguments. The first was that the Paragraph 6 damages award and the method by which it was to be enforced amounted to specific performance, and such an equitable remedy was outside the scope of arbitration. The second was that Latham's *ex parte* phone call to Herbert was "undue means" or "misbehavior" within the meaning of Mississippi's arbitration statute. Painter and Chalk also moved the trial court to strike Latham's affidavit, claiming that the arbitration rules disallowed such evidence and that it was incompetent evidence that the trial court could not consider when deciding whether the *ex parte* phone call warranted vacating the award.

¶12. The trial court confirmed the award, denying the motion to vacate and the motion to strike Latham's affidavit. Painter and Chalk appeal, raising two issues:

> **1. Whether the arbitrator exceeded his powers, within the meaning of Mississippi Code Section 11-15-23(d) (Rev. 2004), when he ordered specific performance of a paragraph of an employment agreement even**

**though the arbitration clause of that agreement reserved "claims in equity" for decision by the Court.**

**2. Whether the arbitrator employed undue means, within the meaning of Mississippi Code Section 11-15-23(c) (Rev. 2004), when, after the reception of all evidence and arguments and without notice to the parties, he contacted a potential witness mentioned in the testimony who had previously served as counsel to one of the defendants, thereby depriving defendants of procedural rights guaranteed by their contracts.**

## STANDARD OF REVIEW

¶13.    "The level of review afforded to the decision of an arbitrator is quite narrow and provided by statute." *Robinson v. Henne*, 115 So. 3d 797, 799 (Miss. 2013). That statute, Mississippi Code Section 11-15-23, provides "the only bases for refusal to enforce an arbitration award . . . ." *Wilson v. Greyhound Bus Lines, Inc.*, 830 So. 2d 1151, 1156 (Miss. 2002).  "Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Hutto v. Jordan*, 36 So. 2d 809, 812 (Miss. 1948).  Furthermore, "[i]f there be any type of arbitration award we should be loathe to disturb, it should be that between private contracting parties respecting a matter of interest only to themselves and their respective pocket books." *Craig v. Barber*, 524 So. 2d 974, 977 (Miss. 1988).  As for the trial court's conclusions of law, we review those *de novo. Smith v. Express Check Advance of Mississippi, LLC*, 153 So. 3d 601, 606 (Miss. 2014) (citing *Virginia Coll., LLC v. Blackmon*, 109 So. 3d 1050, 1053 (Miss. 2013)).

6

## ANALYSIS

¶14. Painter and Chalk frame the arbitrator's damages award and phone call as violations of our arbitration statute, which provides the following as the only grounds for vacating an arbitrator's award:

(a) That such award was procured by corruption, fraud, or undue means;

(b) That there was evident partiality or corruption on the part of the arbitrators, or any one of them;

(c) That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent or material to the controversy, or other misbehavior by which the rights of the party shall have been prejudiced;

(d) That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final, and definite award on the subject matter was not made.

Miss. Code Ann. § 11-15-23 (Rev. 2004).

¶15. Under their first assignment of error, they claim "the arbitrator[] exceeded [his] powers . . ." in violation of subsection (d) by fashioning what they claim is an equitable remedy. As to the second issue, Painter and Chalk argue that either subsection (a) or (c) establishes a *per se* rule against arbitrator *ex parte* contact. For the reasons set forth below, we affirm the trial-court judgment.

## I.      The arbitrator did not exceed his powers.

¶16. In the employment contract, the parties agreed that "[a]ll disputes arising under this Agreement (*other* than claims in equity) shall be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (Emphasis

7

added.)  Painter and Chalk expend a great deal of energy explaining why they think the arbitrator's enforcement of Paragraph 6's damages formula amounted to specific performance, rather than liquidated damages.  Under our law, "[a] claim for specific performance as a remedy for breach of contract is within the equity jurisdiction of the chancery court." ***Derr Plantation, Inc. v. Swarek***, 14 So. 3d 711, 717 (Miss. 2009) (citing ***Lee v. Coahoma Opportunities, Inc.***, 485 So. 2d 293, 294–95 (Miss. 1986)).  Conversely, Mississippi recognizes liquidated damages as a remedy at law, not an equitable remedy. *See, e.g.,* ***Staple Cotton Coop. Ass'n v. Borodofsky***, 108 So. 802, 805 (1926).

¶17.    Painter and Chalk assert that "[t]he remedy the arbitrator devised for Regions is clearly not a legal remedy within the historical powers of the law courts.  While peculiar, it bears the hallmarks of equity . . . ."  They rely heavily on ***Bowen v. Massachusetts***, 487 U.S. 879, 108 S. Ct 2722, 101 L. Ed. 2d 749 (1988), in which the United States Supreme Court discussed the difference in specific performance and remedies at law, particularly its explanation that

> [d]amages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.  Thus, while in many instances an award of money is an award of damages, occasionally a money award is also a specie remedy.

***Bowen***, 487 U.S. at 895 (internal quotation marks, citations, and alterations omitted).

¶18.    But in the arbitration context, "[t]his Court has long acknowledged that arbitration 'might proceed altogether on views of what was right and just between the parties without following either the rules that would govern a court of law or equity in the circumstances.'"

8

***Bailey Brake Farms Inc. v. Trout***, 116 So. 3d 1064, 1068 (Miss. 2013) (quoting ***Craig v. Barber***, 524 So. 2d 974, 977 (Miss. 1988)). "The reason for such limited review is because the Court traditionally has viewed arbitration agreements as tantamount to a settlement between the parties where the arbitration agreement would be the '[]exclusive source of rights and liabilities of the parties.'" ***Robinson***, 115 So. 3d at 802 (quoting ***Hutto***, 36 So. 2d at 812).

¶19.    Three of the AAA rules have particular bearing on this issue. First, Rule 47(a)of the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures affords arbitrators wide latitude in fashioning awards:

> The arbitrator may grant *any remedy* or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

Am. Arbitration Assoc. Commercial Arbitration Rules and Mediation Procedures, R. 47(a) (Rules amended and effective Oct. 1, 2013) (emphasis added). Regarding jurisdiction, rule 7(c) provides in part that "[a] party must object to . . . the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." *Id*. at R. 7(c). Finally, Rule 41 states that "[a]ny party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." *Id.* at R. 41.

¶20.    Painter and Chalk claim that enforcing Paragraph 6 was an equitable remedy and thus not "within the scope of the agreement of the parties" because the arbitration clause of the

employment agreement excepted "claims in equity" from those disputes to be resolved by arbitration. But Rule 7(c) required Painter and Chalk to "object to the . . . arbitrability of [that] claim . . . no later than the filing of the answering statement to the claim or counterclaim that [gave] rise to the objection." It is undisputed that they failed to do this. It was not until *after* the award issued—in their motion to vacate that award—that they first argued the arbitrator had no power to enforce Paragraph 6.

¶21.   Moreover, the record shows that before, during, and after the arbitration, Painter and Chalk not only knew Regions sought damages under Paragraph 6, they also agreed that the formula therein was one for liquidated damages, a legal remedy, and therefore within the arbitrator's power to award. Consequently, under Rule 41(a), they have waived the right to object. At the genesis of this lawsuit, Regions claimed that "Painter and Chalk agreed to a liquidated damages provision . . . ." Regions prayed in the complaint that the court would find in its favor and "award[] liquidated, compensatory, and/or punitive damages in an amount to be determined."

¶22.   In their complaint, Regions also sought a temporary restraining order (TRO) that would enjoin Painter and Chalk from soliciting any more customers and using Regions' confidential information, among other things. In their response in opposition to that TRO, Painter and Chalk argued that Regions had an adequate remedy at law because of the liquidated-damages provision in Paragraph 6. When they agreed to submit the claims to arbitration, the parties carved out some things that would remain under the jurisdiction of the trial court, such as discovery disputes and any violations of the preliminary injunction.

10

Nothing in that agreed order indicated that Painter and Chalk had an objection to submitting the liquidated-damages claims to arbitration.

¶23. In their prehearing brief, Painter and Chalk argued that Paragraph 6 was a liquidated-damages clause, and the arbitrator agreed. During arbitration, their expert's opinion on damages was based on the formula in the liquidated-damages clause. In their post-arbitration brief, they argued it was a liquidated-damages clause but that it was disproportionate and should not be enforced. Thus, under Rule 41(a), they plainly "proceed[ed] with the arbitration after knowledge" that the arbitrator might well enforce Paragraph 6.

¶24. This Court's decision in *J.H. Leavenworth & Son v. Kimble*, 128 So. 354 (Miss. 1930), is instructive. There, we decided an arbitration case that was similar in some respects, where one party was not satisfied with the arbitrator's award because it was dependent on future events and was not a sum certain. *Id.* The dispute was over a three-part sales-and-merger contract, and only the first part had been executed; the second and third parts were merely options that could not be exercised until one and two years later, respectively. *Id.*

¶25. The arbitrators crafted a forward-looking award that allowed for either contingency: if the options were exercised and more profits realized, Leavenworth had to pay Kimble a portion; if they were not exercised by a certain date, Leavenworth did not. *Id.* Leavenworth argued that by not rendering "a mutual final, and definite award on the subject-matter," the arbitrators had exceeded their powers. *Id.* This Court began its analysis by recognizing "the settled general rule that 'it is essential to the validity of an award that it shall be final and complete, responsive to all the matters of difference included in the submission.'" *Id.*

11

(quoting *Rhodes v. Hardy*, 53 Miss. 587 (1876)). However, the Court cautioned, "every rule must be given such an interpretation that it may have a sensible and practical operation," and "where the arbitrators have done everything that they could do, upon the matters submitted, to make an award final, and the award is therefore as final as the nature of the thing submitted will admit of, it is sufficient." *Id.* (internal quotation, citation, and alterations omitted).

¶26.    Then the Court also acknowledged that agreements to arbitrate were interpreted like any other contracts, and "courts seek to give effect to the intent of the parties." *Id.* at 356. Thus, it "is possible for the parties in the agreement to limit the scope of the arbitration in any way that is desired." *Id.*   Applying these principles, the *Leavenworth* Court upheld the award, holding "that in a submission to arbitration, the intent of the parties in making the submission must be construed as such that it is possible for the arbitrators to act justly within the terms of the submission . . . ." *Id.*  Here, Painter's and Chalk's "submission to arbitration" included the claim for liquidated damages under Paragraph 6. And by acquiescing to and participating in the arbitration, they gave the arbitrator authority to decide that claim.

¶27.    In sum, Painter and Chalk agreed to the restrictive covenants, agreed to the damages formula, and agreed to arbitrate Regions' claims that they had breached the covenants and owed damages under the formula. Then they fully participated in that arbitration, and their own expert agreed that the formula would provide the best calculation of damages. At no point prior to the award being issued did Painter and Chalk ever claim the arbitrator had no authority to award this type of damages. Allowing them now to prevail on a claim that the

arbitrator lacked the authority to decide the claims they willingly and without objection litigated before him would be, to "allow the parties, or one of them, to pretend in such a case to submit to arbitration, but without any binding force. Every principle of procedural law as well as those of good faith and fair conduct would condemn such an allowance, and it cannot be permitted." *Leavenworth*, 128 So. at 356. This issue is without merit.

## II.    The arbitration statute does not establish a rule for automatically vacating an award any time there is *ex parte* contact.

¶28.    Our arbitration-jurisprudence canvas is not blank, as "arbitration has existed in Mississippi for decades, and we have a well-developed body of law that strictly dictates our decisions when reviewing an arbitrator's decision." *Robinson*, 115 So. 3d at 801. That body of law includes the principle that awards will be vacated for the reasons enumerated in Section 11-15-23. *See id.* at 802; *see also Wilson*, 830 So. 2d at 1157 (holding that "an arbitration award may be overturned by the reviewing trial court *only* if the elements of the applicable statute are present"). So, when Painter and Chalk urge us to forego any inquiry into the content of *ex parte* contact, we must decline, since such a course cannot be squared with this Court's unequivocal holdings that Section 11-15-23 provides the only bases for vacating such awards.

¶29.    Painter and Chalk also argue that the *ex parte* contact here *did* violate the arbitration statute, but their arguments are unavailing. They claim the arbitrator's conduct violates either Section 11-15-23(a) or Section 11-15-23(c). But the facts of this case fail to support such a claim.

**A.** **The award was not procured by undue means within the meaning of Section 11-15-23(a).**

¶30.    Section 11-15-23(a) provides that arbitration awards may be reversed if they are "procured by corruption, fraud, or undue means." Miss. Code Ann. § 11-15-23(a) (Rev. 2004). Painter and Chalk argue that Latham's phone call constituted "undue means" within the meaning of the statute, so the award should be vacated. But neither the language of that section nor our cases interpreting it supports such a position. "In Mississippi, we have always considered 'undue means' to constitute some nefarious conduct on the part of the arbitrator . . . ." *Robinson*, 115 So. 3d at 802 (citing *McLendon v. Stewart*, 97 So. 547 (Miss. 1923)). We also have "made [it] clear that 'undue means' equals intentional malfeasance." *Id.* Painter and Chalk contend that the phone call was nefarious because it was a "secret *ex parte* conversation with a witness previously identified in testimony for the purpose of including in the final opinion evidence not found in the record." They point to this Court's 1896 opinion in *Rand v. Peel*, 21 So. 10 (Miss. 1896), for the proposition that arbitration awards should be vacated automatically if there was any *ex parte* contact on the part of the arbitrator. *Id.*

¶31.    According to the editor's syllabus in that case, after the close of an arbitration, the arbitrators had trouble reaching a conclusion. *Id.* So the plaintiff "was sent for; and, without swearing him, the arbitrators heard his testimony and decided the question in his favor. No notice was given either to [the defendants] . . . or their attorneys, and they were not present." *Id.* This Court vacated the award, citing no cases or statutes, but referencing an 1896 treatise

14

"and authorities cited." *Id.* Painter and Chalk acknowledge that the legal landscape may have changed since ***Rand***, but they argue that "this Court has never retreated from its determination that a secret *ex parte* communication should lead to the vacation of an arbitrator's award."

¶32.    We disagree. By its very terms, Section 11-15-23(a) requires an inquiry into the content of any *ex parte* content.  Specifically, the statute provides that parties may move for an award to be vacated if it *"was procured by* corruption, fraud, or undue means." Miss. Code Ann. 11-15-23(a) (emphasis added).  Thus, even assuming *arguendo* that Painter and Chalk are correct that "secret *ex parte* communication" is "nefarious" and therefore constitutes undue means, they still bear the burden of showing that the award "was *procured by*" such undue means. This they have not done.

¶33.    Neither Herbert's affidavit nor the award itself indicates that any part of the award "was procured by . . . undue means."[2]  According to Herbert, Latham asked two general, biographical questions: how long had he practiced law, and whether he had done employment-agreement work.  Latham also asked Herbert's opinion about whether he could "take 'judicial' notice of" Herbert's expertise in employment-contract matters.  The award notes that Painter consulted an attorney, but it does not mention Herbert by name.  None of this leads to the conclusion that the award was somehow "procured by . . . undue means."

---

[2]Because we do not reach Painter's and Chalk's argument that the trial court erred by not striking Latham's affidavit, we omit any discussion of that affidavit here; ample evidence apart from it supports our holding.

15

¶34. According to Painter and Chalk, the punitive-damages portion of the award was procured by this conversation. They argue that when the arbitrator found they had "willfully, with calculated intent" breached their employment agreements, he based that finding on the fact that Painter had consulted with counsel before signing. The record shows something else. In his award, the arbitrator noted that Painter had consulted with Herbert, but that consultation was not among his reasons for awarding punitive damages:

> The most illustrative facts that Painter's actions were an intentional wrong is the fact that in response to a direct question by this arbitrator, Painter testified that he had no intention of honoring the Regions Agreement when he signed it and during the course of negotiations with Alliant, Painter negotiated for and obtained an indemnity provision in his employment agreement with Alliant wherein Alliant agreed to indemnify him and provide him with a defense with respect to any litigation involving him related to his Regions termination.

¶35. Thus, Painter and Chalk have failed to show how the award was "procured by undue means" as required by Section 11-15-23(a).

**B.      The arbitrator's *ex parte* phone call did not prejudice Painter's and Chalk's rights within the meaning of Section 11-15-23(a).**

¶36. Painter's and Chalk's argument that the arbitrator violated Section 11-15-23(c) fails, too. Under that provision, their burden was to prove that, by his phone call to Herbert, Latham was "guilty of . . . misbehavior by which the rights of the party shall have been prejudiced." Miss. Code Ann. § 11-15-23(c).

¶37. Painter and Chalk point to only one right that potentially was prejudiced when Latham spoke to Herbert: Painter's right to defend his credibility in front of Latham. They argue that Latham *may* have rejected Painter's duress defense because Painter's credibility was in

16

question after Herbert denied offering any advice on the contract. But the arbitrator had reasons to question Painter's credibility and reject the duress defense before ever making the phone call to Herbert. Specifically, he placed great weight on Painter's admission that he never had intended to be bound by the contract. And the record shows that Painter has signed other agreements substantially similar to the one he claims was procured by duress. Most notable of those is his *later* agreement with Alliant.

¶38. Moreover, when Painter and Chalk discovered that Latham had phoned Herbert, they asked only for him to withdraw from the case, and never sought the opportunity, available under the arbitration rules, to reopen the evidence and rebut anything Herbert had said. *See* Am. Arbitration Assoc. Commercial Arbitration Rules and Mediation Procedures R. 40 ("The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator *upon application of a party, at any time before the award is made*.") (emphasis added). In other words, Painter and Chalk never asserted the right they now claim was denied.

¶39. We likewise reject Painter's and Chalk's contention that we must presume prejudice here because Latham was not forthcoming about his contact with Herbert. They cite ***Merchant v. Forest Family Practice Clinic, P.A.***, 67 So. 3d 747 (Miss. 2011), arguing that this situation is similar to one in which a juror fails to answer questions truthfully on *voir dire*. But our discussion of prejudice there does not support Painter's and Chalk's claims.

17

¶40.    In that medical-malpractice case, one of the jurors previously had been treated by the defendant and thought very highly of him but did not disclose this when asked in *voir dire*. *Id.* During jury deliberations, the juror advocated for a defense verdict and told the other jurors that he had been a patient of the defendant and that the defendant was a good doctor. *Id.* at 753. He also made repeated references to a separate, unrelated medical-malpractice suit that the jury had been instructed to disregard. *Id.* The defense found out and moved for a mistrial, but the trial court denied the motion. *Id.*

¶41.    Reversing, this Court discussed prejudice in that context:

> [When] a party shows that a juror *withheld substantial information or misrepresented material facts*, and where a *full and complete response would have provided a valid basis for challenge for cause*, the trial court must grant a new trial, and, failing that, *we must reverse on appeal. We presume prejudice*. Where, as a matter of common experience, a *full and correct response would have provided the basis for a peremptory challenge*, not rising to the dignity of a challenge for cause, our courts have *greater discretion*, although a discretion that should always be exercised *against the backdrop of our duty to secure to each party trial before a fair and impartial jury*.

*Id.* at 757 (quoting *T.K. Stanley, Inc. v. Carson*, 614 So. 2d 942, 949 (Miss. 1992) (emphasis added by *Merchant* Court)). But this expressly lays out two possible courses of action when a juror fails to disclose information: prejudice is presumed *only after* an inquiry into the nature of the information that was withheld; conversely, no prejudice is presumed—i.e., the trial court retains discretion—when the information may have only "provided the basis for a peremptory challenge." *Id.* The *Merchant* Court specifically noted that the juror's "failure to respond to the [voir dire] questions amounted to withholding 'substantial information'

18

which 'would have provided a valid basis for a challenge for cause . . . .'" *Id.* (quoting *T.K. Stanley*, 614 So. 2d at 949). As discussed above, the phone call was not substantial or material, so we find that Painter and Chalk have failed to prove the arbitrator violated Section 11-15-23(c).

## CONCLUSION

¶42. Painter and Chalk agreed to arbitrate Regions' claim for damages under Paragraph 6, and they did indeed arbitrate that claim. The arbitrator found they had breached their contract and awarded damages based on that agreed-upon formula. While the award may more closely resemble an equitable remedy than a legal one, the arbitrator had authority under the AAA Rules to award such, as Painter and Chalk had waived their right to have that authority limited by other language in the employment agreement.

¶43. And Latham's phone call, under these facts, does not serve as grounds to vacate the award. While we do not condone the sort of *ex parte* contact that occurred here, Painter and Chalk have failed to show that it violated our arbitration statute. Therefore, we affirm the judgment of the Circuit Court of Madison County.

¶44. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**